**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RICKY T. OLIVER,

      Petitioner,

v.                                  Case No. 3:18-cv-694-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

**ORDER**

## I.    **Status**

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, with exhibits, filed on May 24, 2018 (mailbox rule). See Doc. 1.[1] He challenges a state court (Duval County, Florida) judgment of conviction for two counts of attempted murder with a firearm and one count of shooting or throwing deadly missiles, for which he is serving life imprisonment. Id. at 1. Respondents filed a Response with exhibits. See Docs. 9, 18. Petitioner filed a Reply. See Doc. 13. This case is ripe for review.

---

[1] For all documents filed in this case, the Court cites to the page numbers as assigned by the Court's electronic case filing system.

## II.    <u>Governing Legal Principles</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable

3

> application of federal law is different from an incorrect
> application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

### III.   **Relevant Procedural History**

During the relevant time period, Petitioner was facing criminal charges

in three separate state court cases. See Duval County Case Nos. 16-2010-CF-

6391 (attempted murder case challenged in the instant Petition); 16-2010-CF-

6393 (robbery case); 16-2008-CF-17817 (sale or delivery of cocaine). For the pre-

trial proceedings, the attempted murder case and the robbery case largely

travelled together.

On July 10, 2012, Petitioner filed a pro se motion to discharge his

appointed counsel, Sissy Adams-Jones, in the attempted murder and robbery

cases. See Doc. 9-2 at 52-55. On September 20, 2012, the trial court conducted

a final pretrial hearing. See Doc. 9-5 at 42. The court asked Petitioner whether

he still wanted to discharge his counsel, to which Petitioner responded, "I'm

thinking." Id. at 47. After allowing some time for Petitioner to contemplate his

decision, the court stated:

> All right. Well, let me let you think about it. I'm
> only going to hear this, if you really want to do it. And
> the fact that you're thinking now, which is a good
> thing, tells me that I'm certainly not going to hear it
> today.

4

> So what we're going to do, is we're going to continue these cases. . . . So we are going to set this for trial and final pretrial and also set it for an interim date where Mr. Oliver can tell us whether he wants to proceed with his <u>Nelson</u>[2] request or not.

Id. at 47, 49. Subsequently, on September 25, 2012, the trial court held a hearing to resolve Petitioner's pro se request to discharge his counsel:

> THE COURT: All right. Mr. Oliver, have you decided which way you want to proceed, sir?
>
> THE DEFENDANT: Yes, sir. I'd like to obtain conflict . . . free counsel and, as a last resort, I'd go pro se, but I have a conflict with my attorney and I'd like to - -
>
> THE COURT: Okay. Let me ask two questions then, since you've told me that you, in effect, want a <u>Nelson</u> hearing and then you'd like a <u>Faretta</u>[3] hearing if the <u>Nelson</u> hearing doesn't go your way. So, have you filed a written motion for both of those things?
>
> THE DEFENDANT: Just a motion to dismiss counsel.

Id. at 55-56. The court then explained to Petitioner that he needed to file a <u>Nelson</u> motion and a <u>Faretta</u> motion and the requirements of such motions, and continued the proceeding. Id. at 56-57.

On September 27, 2012, the court reconvened and Petitioner advised the court that he wished to withdraw his motion to dismiss counsel and proceed

---

[2] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

[3] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

5

with a <u>Faretta</u> hearing so he could proceed pro se. <u>Id.</u> at 64. After extensive questioning and advising Petitioner of his rights and the dangers of self-representation, <u>see id.</u> at 64-101, the court made the following findings:

> THE COURT: All right. At this time, even though the defendant's got physical problems and he has been diagnosed as paranoid schizophrenic, he is not exhibiting any such behavior.
>
> In fact, he is exhibiting quite clear thought in court. His demeanor is excellent. And I can tell by all of his answers, they are logical and they make sense.
>
> I am not saying that he is going to be a good lawyer, and I doubt very seriously that he will be one, but he does understand the dangers that he is encountering.
>
> And he's got the right under case law and our constitution to represent himself. So even though I think he is making a real bad mistake, I'm here to guarantee his right to make that mistake.
>
> Therefore, at this time I do allow Mr. Oliver to proceed pro se. His current counsel will be here as standby counsel, and we'll proceed to trial.
>
> Now, I do believe we've got a final pretrial on 11/15 and a jury selection date 11/26.
>
> Let me just ask you now, Mr. Oliver. Do you want to keep that trial date?
>
> The State is announcing that they want to try the robbery first?
>
> [PROSECUTOR]: Your Honor, that's the one that has been prepared. It's my understanding in discussions with Ms. Sissy Adams that the defense had

not completed depositions in the shooting case. I believe everything is ready to go in the . . . unarmed robbery case.

So at this point, obviously, he would be entitled to get all of that material. I don't know if he still wants to try to do the 26th or if he wants to move it.

THE COURT: That's what I'm asking now.

I'll ask counsel. Did you take depositions in the robbery case?

MS. ADAMS-JONES: In the robbery case, yes, with the exception of about two category A witnesses.

THE COURT: Okay. So it may well be that Mr. Oliver is all ready to go. His counsel has already prepared the case, and we can keep that trial date of 11/15, 11/26.

If both sides agree with that, we will, but if you want a continuance, tell us now, Mr. Oliver.

THE DEFENDANT: Yes, sir, I do. . . . I want to deposition the other remaining two category A witnesses.

Id. at 101-03. The trial court then granted Petitioner's request for a continuance of the trial date. Id. at 103.

On January 9, 2013, during a status hearing, the court confirmed that Petitioner wanted to continue representing himself, granted Petitioner additional time for discovery, and reset the trial for May 13, 2013. Id. at 150, 157-58. Petitioner commented during the status hearing that he was being

7

"forced to be representing [himself] now, because nobody is helping [him]." Id. at 158. The court advised Petitioner:

> THE COURT: . . . [W]hen you say you're forced into self-representation, I wanted the record to be very clear, I'm certainly not forcing you into self-representation, and if at any time all you have to do is ask me, and I will put . . . Ms. Adams-Jones back on as your attorney at any time. So you're not being forced. I want the record to be real clear. You might have meant something different than the way it sounded, but you're not being forced in any way to represent yourself. This is your decision. . . . You either represent yourself, as you've chosen; or you go back with Ms. Adams-Jones.

> Has there ever been a Nelson inquiry in this case?

> THE DEFENDANT: I would like to have another one, so I can get rid of her.

> THE COURT: We're not going to have another one, if we've already had one.

> THE DEFENDANT: No, we didn't.

> THE COURT: A Nelson inquiry is where you say, Judge, she's been ineffective in representing me, and therefore - -

> THE DEFENDANT: I withdrew that motion, Your Honor.

> THE CLERK: That's correct.

> THE COURT: . . . [A]t any rate, you have a choice. The only choices you have are Nelson - - and that's where you seek to have someone else represent you - - or representation of yourself, or Ms. Adams-Jones. Those are you three choices.

8

> But it's your decision[]. It's not the Court's decision. And I'm certainly not forcing you one way or the other.
>
> Do you understand, Mr. Oliver?
>
> THE DEFENDANT: Yes, sir.

Id. at 162-64.

During a pretrial hearing held on March 5, 2013, Petitioner advised the court that he wanted to remain pro se in his attempted murder case, but he requested the court reappoint Ms. Adams-Jones as his counsel in the robbery case and then conduct a Nelson hearing. Id. at 173. The court, Petitioner, and the prosecutor engaged in a discussion regarding Petitioner's intentions with respect to his representation in both cases. See id. at 173-87. Notably, the following discussion occurred:

> [PROSECUTOR:] Judge, one of the things that I don't know if the court picked up on, this defendant stated that in the second case [(the attempted murder case)]. . . when that goes to trial, he said he is going to get a lawyer.
>
> . . . .
>
> THE COURT: Did you say that; you're going to represent yourself in the second case?
>
> THE DEFENDANT: No, sir. I didn't say that. I said I'm going to continue to do my research on that case. And when the time comes, the trial date is set, I will hand it over to my counsel.

[PROSECUTOR:] That's exactly what he said. He is going to hand it over to a lawyer after he does what he wants to do with it. That's a concern.

And I would cite the court to <u>Jones v. State</u>, which is a Florida Supreme Court case. It says an individual that is representing himself can't willy nilly go back and forth between choices.

It puts the court, it puts the lawyer that's representing him in an absolutely impossible position.

It needs to be a solid decision made by this defendant based on all the information the court gets through a <u>Faretta</u> [i]nquiry of whether he truly wants to represent himself or not.

This defendant is stating today before the Court that he is just going to do what he wants, and then he is going to hand it off to a lawyer right before the trial or whatever. I think that is completely unacceptable. And the State of Florida would object.

If we have a hearing, we should have it as to both cases and not just the one case.

THE DEFENDANT: I don't see where that's a concern, Your Honor, because either I get appointed a counsel or I take it all the way to the jury selection and then hand it over to a counsel. That's the same thing.

THE COURT: I'm not really sure that that issue is ripe, especially in light of the fact that the State wants to try the case ending in 6393 [(the robbery case)] first. And if we do try that case, that will be the second case that Mr. Oliver gets tried, and then eventually if he is convicted, sentenced upon.

I'm not really going to worry too much about the third case unless that comes up.

> But I think the State is correct. The defendant should not be able to just play games with the court and bounce back and forth between self representation and tax-payer provided attorney representation.
>
> And the State, you can bring that up tomorrow. If there is some way that we can resolve it, then I will do that. But right now his current motion only addresses the 6393 case.

Id. at 184-86.

On March 25, 2013, a hearing was held, at the beginning of which the court confirmed that Petitioner wanted to proceed pro se. Doc. 9-6 at 5, 12. Petitioner advised the court that he was withdrawing his request to have counsel reappointed in the robbery case. Id. at 6-7. The court heard argument on Petitioner's pro se motion to dismiss the robbery case and denied the motion. Id. at 24-25. The court then had a discussion with Petitioner about his options of proceeding with or without counsel in both his robbery and attempted murder cases. See id. at 25-33. Petitioner renewed his request for a Nelson hearing in his robbery case. Id. at 33.

Therefore, another hearing was held the following day. See id. at 36. Petitioner withdrew his request for a Nelson hearing in the robbery case, and requested that counsel be appointed to represent him in that case only. Id. at 41 (requesting counsel be appointed for the robbery case but indicating he would "like to remain pro se on [his] 6391 case"). The court reappointed Ms. Adams-Jones in the robbery case. Id. at 41-42. The robbery trial had previously been

11

set for May 13, 2013, and the court confirmed that date with the parties. Id. at 45.

On June 3, 2013, Petitioner filed a pro se demand for speedy trial in his attempted murder case. Doc. 9-2 at 93. On June 5, 2013, the court held a hearing to discuss the case. See Doc. 18 at 7-17. The prosecutor advised the court that the case was set for trial in September 2013, but in light of Petitioner's demand for speedy trial, the trial would have to be moved up. Id. at 9, 12. The court suggested July 8 or 15, 2013, but the clerk advised that Petitioner's stand-by counsel had asked that the trial not be set for the week of July 8 because she would be unavailable. Id. at 12-14. The following exchange then occurred:

> THE COURT: . . . [The clerk] told us that [stand-by counsel] didn't want that week, but that is the week it is going to have to be. By the way, Mr. Oliver, you still want to represent yourself?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: In this other trial, even though your attorney got you practically off during the last trial. You want to represent yourself?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Did you want her to be your standby counsel?
>
> THE DEFENDANT: Yes, sir.

THE COURT: She may not be able to be there that week. You are the one asking for speedy trial. You may not have a standby counsel that week. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: If it turns out she can't be here if you want to continue and withdraw your demand for speedy trial, it is up to you. Otherwise, you may be putting yourself in a position where you can't try this case with standby counsel. Do you understand, sir?

THE DEFENDANT: Yes, sir.

THE COURT: She is going to be out of town that week. She can't be here that week. So I will tell you right now she is not going to be here. So if you want speedy trial, that is the week we are going to set this.

You are going to be without standby counsel. That is just the way it is. Do you understand? If you want standby counsel, tell me now. If you would rather have standby counsel than speedy trial within the next 45 days tell me now.

THE DEFENDANT: Yes, sir. I want standby counsel.

THE COURT: Well, you are not going to have standby counsel, because I am setting this within the 45-day period. I am setting it on the week where your standby counsel can't be here. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: I will consider appointing another attorney as your standby counsel. But they won't be as familiar with the case as she is.

13

THE DEFENDANT: I need her.

THE COURT: Okay. Well, you are not going to have her pursuant to your demand for speedy trial. You can appeal this all you want if you get convicted. Thank you. Take Mr. Oliver back.

. . . .

THE COURT: So the record is clear, it is over his objection, but the Court has no choice.

[PROSECUTOR]: Are we doing it the 8th?

THE COURT: Yes, ma'am.

Id. at 13-16.

On June 25, 2013, the court confirmed with Petitioner that he wanted to continue proceeding pro se and reviewed the procedural history of the case. See id. at 21-24. The following discussion occurred:

THE COURT: We had our calendar call on 6/5 I believe?

THE DEFENDANT: Yes, sir. Jury selection was set for 7/8.

THE COURT: That's right. And I told you that if you wanted us to keep that trial date that your standby counsel would not be available. Let me ask you this, . . . do you want me to appoint someone else to be your standby counsel that week?

THE DEFENDANT: No, sir. Ms. Adams has informed me that she'll be able to represent me as standby on the 8th.

14

> THE COURT: Oh, okay. So whatever plan that she made she's changed it so she can be there?
>
> THE DEFENDANT: Been delayed, yes, sir.

Id. at 24. Then, at the final pretrial hearing on July 1, 2013, the court conducted a final Faretta inquiry, during which petitioner confirmed that he wanted to continue representing himself and that his standby counsel would be present. Id. at 29-56. The prosecutor interrupted, "Your Honor, if I may interject, Miss Adams-Jones won't be here." Id. at 33-34. The following exchange then occurred:

> THE COURT: Thank you, sir, I stand corrected. Because you demanded speedy trial, this was the only day the Court could try your case within the speedy trial period, therefore, you will have to proceed without Miss Adams. Miss Adams, what?
>
> [PROSECUTOR]: Jones.
>
> THE COURT: Jones, do you understand?
>
> THE DEFENDANT: Yes, sir, she told me she would be present.
>
> THE COURT: Okay, but I always try to give you the worst case scenario in a waiver like this. . . . I don't think you can waive your rights unless you know. Now, she might not be here that week, but **you'd prefer to go to trial that week within your demand for speedy trial with or without her, is that correct, sir?**
>
> THE DEFENDANT: **Yes, sir.**

Id. at 34 (emphasis added). At the conclusion of the hearing, the court again inquired of Petitioner:

THE COURT: Having been advised of your right to counsel, the advantages of having counsel, the disadvantages and dangers of proceeding without counsel, the nature of the charges and possible consequences in the event of a conviction, are you absolutely certain that you do not want me to appoint [a] lawyer to defend you, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you want me to continue to appoint Miss Adams-Jones in the event she can be here, we're not sure if she can, but if she's here[.] Do you want me to continue to appoint her as stand-by counsel?

THE DEFENDANT: Yes, sir.

THE COURT: **If she's not here you want to go to trial without her, is that correct?**

THE DEFENDANT: **Yes, sir.**

THE COURT: Okay. Then she is so appointed. We'll see whether she can make it or not.

Id. at 55-56 (emphasis added).

On July 8, 2013, the day of jury selection, Petitioner advised the court that he wanted his stand-by counsel, Ms. Adams-Jones, reappointed to represent him. Doc. 9-3 at 9. Ms. Adams-Jones advised the court that she had spoken with Petitioner the night before, and he advised her that he was going to request she be reappointed. Id. at 11. She indicated that if the court reappointed her, she would need a continuance of the trial to prepare. Id. The court acknowledged that Petitioner had filed a demand for speedy trial, and

after some discussion, Petitioner stated he would withdraw that demand. Id. at

11-12. The state, however, objected, and argued that Petitioner was engaging a

delay tactic; according to the state: Petitioner "was asked on numerous prior

court dates by Judge Stetson whether or not he wanted his trial or his stand-by

counsel, knowing that Ms. Jones would be unavailable the week of July 8th."

Id. at 12-13. The state continued:

> I actually had Mr. Oliver added on the calendar when I received a copy of the [demand for] speedy trial. He filed it directly after a trial that I tried him on. When he came to court the date that he said himself was July 8th. At that point in time Ms. Gardner, who's Judge Stetson's JA, who knew Ms. Adams-Jones['] schedule, said Ms. Adams-Jones has already notified us that she is not available that week.
>
> Judge Stetson went through a long series of questions with him, do you want your stand-by counsel or do you want your trial, do you want your stand-by counsel or do you want your trial. Every time he said he wanted his trial.
>
> He's had three pending cases. One he's serving a sentence on for 20 years and the other one he had a robbery case and all of which he filed speedy trial notices and then when the trial date comes he wants a continuance. I know the Court is not aware of that, but as an officer of the court, I know Ms. Adams-Jones will also agree as an officer of the court, that every time we get to a trial date he somehow - - he'll file a demand for speedy trial and at the trial date he'll say, oh, no, I want a continuance, I want this, I want that. And then the last time we went to trial it was over his objection to a continuance where he basically demanded a speedy trial in that case, too.

> So this has been a pattern for this particular defendant. . . . I'm sure once we get back, if the Court grants a continuance, he'll file another demand for speedy trial and then we'll be in the same kind of circular hamster wheel, essentially, like we'll come at his whim that he wants a speedy trial and then when we get there he doesn't want it.

Id. at 13-14. Ms. Adams-Jones also recognized that Petitioner had filed "numerous demands for speedy trial" in his other cases, but she explained that discovery still needed to be conducted and assured the court that if she were reappointed, she would not file a demand for speedy trial. Id. at 15.

In considering Petitioner's request to withdraw his demand for speedy trial, the court summarized the procedural history of the case:

> THE COURT: Well, I think the problem is, and, of course, I can't read the future, but and I take you[4] at your word as an officer of the court that you would not file a demand for speedy trial, but that doesn't stop him from deciding to go pro se again and then doing it again. So there's no guarantee whatsoever that that wouldn't occur again.
>
> But beyond that, there's some very specific rules I think. The first thing I need to do is figure out, since I haven't handled the case all along -- this is case No. 2010-6391 and I just need to make sure I've got a printout of the cases I'll give the correct one -- or maybe I don't even have the correct one. I do. So it looks like, just for my own sake, on July 15th, 2010, he was arraigned. He had a final pretrial November 10th of 2010 and then following that, obviously it didn't go to trial, several status hearings and then a disposition date of January 25th of 2011, obviously did not get

---

[4] Referring to Petitioner's stand-by counsel, Ms. Adams-Jones.

disposed of. Another final pretrial February 17th of 2011, two pretrials and then a final pretrial April 7th of 2011. Final pretrial July 21st of 2011. One, two, three, four, five pretrials and then another final pretrial October 13th of 2011. Three more pretrials and then a final pretrial December 8th of 2011, a final pretrial March 15th of 2012, final pretrial March 22nd of 2012, final pretrial June 14th of 2012, a pretrial and then a final pretrial September 20th of 2012, a pretrial and then a hearing on a motion September 27th of 2012. Four, five, six, seven, eight, nine, 11 pretrials and then a final pretrial May 8th of 2013. Final pretrial May 23rd of 2013. Two pretrials, a hearing on motion June 5th of 2013, a final pretrial June 25th of 2013, final pretrial June 27th of 2013, final pretrial July 1st of 2013 at which it was passed until today for jury selection.

Id. at 15-17. The court recited the pertinent portion of Florida Rule of Criminal Procedure 3.191(g) regarding demands for speedy trial,[5] confirmed the state objected to Petitioner's request to withdraw his demand, and then concluded:

THE COURT: The rule is here for a reason and the reason it's here and the reason it is so strict is to keep people -- and I'm not accusing you of doing this, please don't misunderstand, but it's to keep people from playing games with the Court, that when they say they're ready they're ready, and a demand for speedy trial is something that the rest of us all have to sort of jump through some hoops and get it done and we change schedules, we get other judges to help us, whatever we need to do to as a system to assure that

---

[5] "A demand [for speedy trial] may not be withdrawn by the accused except on order of the court, with consent of the state or on good cause shown. Good cause for continuances or delay on behalf of the accused thereafter shall not include nonreadiness for trial, except as to matters that may raise after the demand for trial is filed and that reasonably could not have been anticipated by the accused or counsel for the accused." Fla. R. Crim. P. 3.191(g).

your demand is honored. And that's why the rules committee of the Supreme Court and the legislature have made this rule so strict, is that it causes everyone, besides you, to take note that you're ready, that you're demanding your trial, and it's time to move forward. And there's nothing that's been told to me, unless there's some case law I'm not aware of, where what you're saying today would be good cause.

And although Mr. Oliver has apparently related to you that he was under the impression that you would be available, the State has indicated that that is not correct, that Judge Stetson clearly told him that you would not be available and that that was his choice if he wanted to go ahead and proceed and he chose to proceed without.

In fact, I believe Mr. Overstreet [(the prosecutor)] might have even told me that right as Mr. Oliver mentioned that he might want to have you reappointed that he had already made that decision that he was prepared to proceed. He wanted to honor -- have the Court honor his demand for speedy trial as opposed to waiving, withdrawing, whatever Judge Stetson, whatever words he might have used.

So I don't know anything more than what I've been told and what the rules say. Based on what the rules say, I can't find good cause and the State has informed us that they are not prepared to consent to having that demand withdrawn.

Id. at 17-21. The court conducted another Faretta inquiry. Id. at 23-38. During

that inquiry, the following occurred:

THE DEFENDANT: For one thing I totally misunderstood what [Judge] Stetson was telling me last - - when we set this trial date. My stand-by counsel, Sissy Adams, was informing me that she was not going on vacation until the end of the week and that she

20

> would be her to represent me on my trial and when [Judge] Stetson asked me if I would - - he gave me the option to withdraw my demand for speedy trial, knowing that she wouldn't be there to represent me, but I was not aware of that and still ain't aware of that. She's told me that she's going to be able to represent me and I need an attorney. Point-blank. And I need somebody that's familiar with my case. I'm facing two life sentences and 60 years.
>
> . . . .
>
> THE COURT: . . . You've known for three years what you're facing, correct? And you've gone back and forth attorney, not attorney, attorney, not attorney.
>
> THE DEFENDANT: No, ma'am, I have not. I have not went pro se but one time. I don't know what they're talking about, but I've never went pro se but one time and I reappointed her on my trial last month and I had her on my robbery case, she represented me, and I stayed pro se on my remaining charges to do research on it and - - and just like I did in my last trial I'm requesting trial counsel.

Id. at 35-36. The court, while recognizing that Petitioner was requesting counsel, found that Petitioner was competent to waive his right to counsel and his waiver was knowingly and intelligently made. Id. at 36-37.

The case then proceeded to jury selection, during which Petitioner commented to the prospective jurors that he was being forced to proceed pro se despite his request for counsel. Id. at 129. The following discussion was had outside the presence of the prospective jurors:

> [PROSECUTOR]: Mr. Oliver, as the Court has ruled previously, has shown that he is flip-flopping

21

between counsel and not having counsel simply to, in the State's argument, to achieve delay, that the defendant demanded speedy trial, he was asked numerous times by Judge Stetson in the scheduling of his trial whether he wanted stand-by counsel or counsel and the defendant stated he wanted his trial regardless of the fact whether counsel would be available to assist him in trial as stand-by counsel. It wasn't until today that the defendant has chosen that he would like counsel back in an effort to delay. He's bound by his demand for speedy trial.

. . . .

THE DEFENDANT: I'm just saying I'm not trying to flip-flop the system. . . . I know absolutely nothing about this system. I know I read this <u>Faretta</u> inquiry and it states right off the rip if you request counsel, I should be requesting counsel, I'm requesting it and I don't know why I'm being refused it. And other than that, you know, you can go on and railroad me, whatever you're going to do and, you know, how you wait. That's all I can say. I can't change it. . . .

THE COURT: . . . I think [the prosecutor] is requesting that the Court advise you that during the rest of the trial you cannot comment on whether or not you requested counsel. He won't comment on it. He is going to say that you chose to represent yourself. I'm going to say it. And even though you disagree that that's what you did, based on the history of the case, based on conversations that you had with Judge Stetson before it came to me, based on your demand and based on your knowledge of the unavailability of your stand-by counsel, and based on your repeated request to, at the time of trial, then choose to have an attorney when the rest of the time you chose not to have an attorney, the Court cannot go on like that forever and ever. We could go on like that for years, so at some point the Court has to make a decision that you have

changed your mind enough times that we're going to proceed.

I told you that the filing of a demand for speedy trial is a serious filing. It's not like asking for a witness' name. That's how important it is. But when you demand speedy trial, you say you're ready, you don't need anything else. You demanded it when you were pro se and Judge Stetson went over all this at final pretrial, he gave you the option, you chose not to take it and said you were ready to go. You come in today at jury selection and ask for something different. The Court has ruled that we're going to proceed without counsel. You can appeal that ruling and the appellate court can make a decision as to whether or not this Court's ruling was correct. But you can't stand up and say that's not true, I did not choose to represent myself and - -

THE DEFENDANT: I'm not choosing that.

THE COURT: You chose that up until the time of selecting the jury. . . .

. . . .

THE DEFENDANT: . . . And what I don't understand is Judge Stetson even offered to appoint me counsel that wouldn't know nothing about my case, even if Ms. Adams wasn't here, you know, and I - -

THE COURT: And you said no.

THE DEFENDANT: She told me she was going to be here. That is the reason why I said I'll keep counsel, 'cause he asked me did he want me to reappoint counsel or at some point in time he - - he might be reappointed counsel that don't know nothing about your case and you'll go to trial with somebody that's not even familiar with the case. That's what Judge Stetson told me.

> THE COURT: Okay. Well, there's a transcript of every court appearance that you've had with Judge Stetson and I've taken the word of the officers of the court and you. I've taken it together and determined what it seems to me the facts and the history of the case are and I've made my ruling. And I understand you don't agree with it, but that's how we're going to proceed.

Id. at 131-36. The jury was then selected.

The following morning, outside the presence of the jury, the trial court cited to three cases that "discuss the fact that when the defendant in each of those cases appeared before the Judge at their final hearing prior to the date of jury selection . . . that the conversation or colloquy that the Judge had with the defendants on that final pretrial date sufficed as the final Faretta inquiry for purposes of trial." Id. at 162-63. The court explained pertinent portions of those cases and reiterated the same finding that Petitioner was competent to waive his right to counsel and his waiver was knowingly and intelligently made. See id. at 162-69. In pertinent part, the following conversation was had:

> THE DEFENDANT: I'm terribly confused about this situation where you're saying that I discharged counsel, I re-requested reappointment of counsel, discharged counsel. That ain't never happened. I went pro se one time and I requested stand-by counsel Sissy Adams. . . . I filed one motion to . . . get rid of stand-by counsel because we had a conflict and I withdrew that motion and I never went pro se, . . . I only went pro se one time. I never re-requested counsel. I stayed pro se all the way until I went to trial and I . . . felt like Ms. Adams would be better at representing me in my defense, you know, as far as being more knowledgeable

24

with what she can object to, what she can't object to, and I ain't never went back and forth, back and forth. So I don't know why the State is even going to say that because I haven't went pro se but one time and that's when I went to trial last month and I requested trial - - to be reappointed counsel at this trial.

As far as my hearing on final pretrial, if I wouldn't have been misadvised from stand-by counsel that she would be available this week to sit in on my trial, I would have asked [Judge] Stetson, because he gave me the opportunity to withdraw my demand for speedy trial or be reappointed a counsel, but by stand-by counsel's words telling me I'll be here, I'm not going until the end of the week, I'll be able to stand in on your trial, I said okay, I'll be okay. The record should reflect that I said my attorney said she will be here and it does.

. . . .

Well, at this time I'm still requesting to be appointed counsel because I am incompetent as far as representing myself in this trial and . . . I'm entitled . . . to be represented by counsel.

. . . .

[PROSECUTOR:] Your Honor, I think the clerk's file as well as this case, but also in conjunction with his other two cases - -

THE COURT: They all have to be read together.

[PROSECUTOR:] They all have to be read together, the robbery case, the statements of Ms. Sissy Adams-Jones, also what would be contained on the record in front of Judge Stetson . . . .

. . . .

THE DEFENDANT: . . . I've been represented in three different cases with Ms. Adams and that's where the big confusion is coming in about, you know, I don't want to be represented on this and that. But I've never actually requested that she be discharged. When I went pro se, I requested she be my stand-by counsel and . . . I placed the motion in to . . . fire stand-by conflict counsel and be reappointed conflict-free counsel, but I withdrew the motion because me and her had a talk and I had an understanding, . . . reason why she was doing what she did or why she said what she said and . . . I withdrew that, . . . and I've been represented by Ms. Adams for three and a half years . . . .

THE COURT: Okay. Well, the record will reflect everything correctly. . . . What I went over from the record yesterday was the clerk's printout. I can't remember what the State said they were going over which had a little more detail than what I was going over. You clearly were pro se and not represented when you came in here. . . .

Id. at 170-76. The trial was held, Petitioner was found guilty, and he is serving life imprisonment.

## IV.  Analysis

### a. Ground One

Petitioner argues that he was deprived of his Sixth Amendment right to counsel. See Doc. 1 at 3 (citing to his initial brief on direct appeal). He acknowledges that before his trial, he requested to proceed pro se "only one time." He contends, however, that he subsequently requested counsel, but he "was forced on the day of trial to represent himself."

26

Petitioner, through appellate counsel, raised this claim on direct appeal. Petitioner acknowledged on appeal that the trial court, after conducting a <u>Faretta</u> hearing on September 27, 2012, permitted Petitioner to proceed pro se. Doc. 1-1 at 40. Petitioner asserted that he "was unequivocal in every court proceeding up until the proceedings of July 8, 2013, that he wanted to remain pro se in this case." <u>Id.</u> According to Petitioner, "[i]t was not until it became clear that his stand-by counsel was not going to be available for trial, that [Petitioner] moved to withdraw his demand for speedy trial and advised the court that he wanted to terminate self-representation in this case and to have counsel reappointed." <u>Id.</u> He requested counsel several times throughout the trial, but the trial court denied his requests. <u>Id.</u> at 40-41.

In its answer brief, the state argued as follows:

> The instant case was one of three of [Petitioner]'s cases pending in the trial court during the same time period. In the other two cases, [Petitioner] filed demands for speedy trial but requested continuances [whe]n the trial date arrived. Reading from the clerk of court's computer, the prosecutor related [Petitioner]'s long history of retaining and discharging counsel:
>
>> I can let the Court know also, additionally on the clerk's screen, that while the defendant demanded speed trial and discharged his trial counsel in 2011, he then went pro se, took back Ms. Jones and then again went pro se in July of 2012. On July 10th, 2012, he filed a motion to discharge his counsel, a <u>Faretta</u> inquiry was held then, and this is always right

before a trial is set. The trial was set in June of 2012 and the defendant again fired his attorney as trial was set and then was allowed to continue the case to September of 2012. And then it looks again that counsel was reappointed in September of 2012 when a November date was set for trial and then again later on in September of 2012, again on September 27th 2012. Another <u>Faretta</u> inquiry was held and counsel was discharged. Trial was then again reset. There were numerous pro se motions filed and heard in October of 2012. And then it appears the defendant remained pro se for the length of that time.

. . . .

And then again in March of 2013, the defendant again requested to remain pro se and trial was set for May of 2013. The defendant later on filed his motion for speedy trial in June and here we are today.

Thus, [Petitioner]'s attempts to discharge and reappoint counsel, especially in the face of speedy trial demands, is the very definition of the type of "willy-nilly" manipulation of the justice system that <u>Jones</u> and <u>Langon</u>[6] condemn, and the trial court could not have abused its discretion in denying the reappointment of counsel under such circumstances . . . .

[Petitioner] argues that the trial court and this Court are required to ignore [his] long history of abusing the judicial system. [He] cites no authority for this

---

[6] <u>Jones v. State</u>, 449 So. 2d 253 (Fla. 1984); <u>Langon v. State</u>, 791 So. 2d 1105 (Fla. 4th DCA 1999).

> proposition, despite bearing the burden of persuasion.
> This is unsurprising, as the notion that the trial court
> must willfully blind itself to [Petitioner]'s behavior in
> other pending cases when evaluating the motives of the
> [Petitioner] in the instant case is absurd. Such a rule
> would allow a defendant to play games ad infinitum
> with the justice system simply by restarting the game
> in one case when their manipulations in another case
> have reached their limit. This is precisely the kind of
> situation that the Florida Supreme Court clearly held
> that a trial court need not tolerate from a defendant.
> [Petitioner]'s abusive treatment of the court system
> caught up to him, and he cannot complain of the lack of
> an attorney when it is his games that deprived him of
> one.

Doc. 1-1 at 75-77.

In his counseled reply brief on appeal, Petitioner argued that even if he

"abused the right of counsel in his other, unrelated, pending case, nothing in

his behavior in that case applies in the instant case." Id. at 116. Petitioner

argued that his "constitutional right to counsel, as well as the right of self-

representation, applies to each individual case; choosing to proceed pro se in

one case does not cancel the right to counsel in another case." Id. at 115.

The First District Court of Appeal entered the following per curiam

opinion:

> The appellant, Ricky T. Oliver, appeals his
> conviction and sentence on two counts of attempted
> first degree murder. Appellant challenges the trial
> proceedings on several grounds, and challenges the
> consecutive mandatory minimum sentences imposed.
> **We affirm the convictions without comment.**
> Regarding the consecutive mandatory sentences, the

> consecutive provision is mandatory. <u>Walton v. State</u>,
> 106 So. 3d 522, 528 (Fla. 1st DCA 2013), <u>rev. granted</u>,
> 145 So. 3d 830 (Fla. 2014). As in <u>Walton</u>, and <u>Jackson
> v. State</u>, 157 So. 3d 539 (Fla. 1st DCA 2015) we certify
> conflict with <u>Irizarry v. State</u>, 946 So. 2d 555 (Fla. 5th
> DCA 2006).

Doc. 9-9 at 2-3 (emphasis added). The Supreme Court of Florida subsequently

accepted jurisdiction of the case and remanded the case for reconsideration of

the consecutive sentences imposed. <u>See</u> Doc. 1-1 at 139. The First DCA then

remanded the case to the trial court for resentencing on the issue of consecutive

or concurrent service of the sentences on the attempted first-degree murder

counts. <u>See</u> <u>id.</u> at 143-45. Petitioner was resentenced, and the modified

judgment was entered on November 21, 2017, "to reflect mandatory minimum

provisions to run concurrent." Doc. 9-10 at 2.

This Court finds that the state court's adjudication of this claim is entitled

to deference and the record supports that adjudication. The trial court

conducted thorough and multiple <u>Faretta</u> inquires, wherein it (1) advised

Petitioner of his right to counsel, the dangers and disadvantages of proceeding

pro se, court procedures, and the nature of the charges against him and possible

penalties; and (2) elicited information from Petitioner regarding his background

and physical and mental capabilities. The trial court found on multiple

occasions that Petitioner had knowingly, intelligently, and voluntarily waived

his right to counsel. <u>See</u> <u>United States v. Wilson</u>, 979 F.3d 889, 912 (11th Cir.

2020) ("A defendant's waiver of his right to counsel is valid so long as his choice was knowing, intelligent, and voluntary."). The court also repeatedly inquired of Petitioner whether he wanted to continue proceeding pro se. At the final pretrial hearing, which was held only 7 days prior to the jury selection, Petitioner specifically advised the trial court that he wanted to continue proceeding pro se even if his stand-by counsel could not be present on the date the trial was scheduled to begin—a date that was selected to accommodate Petitioner's speedy trial demand. It was not until the morning of jury selection that Petitioner sought to have counsel reappointed to represent him.

Petitioner's demand for a speedy trial and his decision to proceed pro se until the day of jury selection suggest deliberate manipulation of the process. He cannot complain that his objective was frustrated by the circumstances he created. Cf. Horton v. Dugger, 895 F.2d 714, 716 (11th Cir. 1990) ("The functional right of a defendant to withdraw his request to represent himself and reassert the right to counsel at any time immediately before, or perhaps even during trial, is, **absent deliberate manipulation**, virtually assured." (emphasis added)).

Additionally, Petitioner argued in the state court proceedings that despite the trial court's multiple warnings, he did not fully understand and he believed his stand-by counsel would be present at trial. He also argued that contrary to what the state represented, he did not flip-flop between representing himself

31

and requesting counsel in the attempted murder case. The state court's adjudication of this claim, however, reflects that his arguments were not persuasive.

Upon thorough review of the record and the applicable law, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.[7] Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

### b. Ground Two

Petitioner claims that he was denied his Sixth Amendment right to counsel "by being forced to proceed upon [his demand for a] speedy trial." Doc. 1 at 4. He asserts that he showed "good cause to withdraw his demand for speedy trial" so that his standby counsel could "properly investigate the case [and] complete discovery," but the trial court denied it.

Petitioner, with the help of appellate counsel, raised this claim on direct appeal. He argued that good cause was shown for the following reasons: "as all

---

[7] See Moody v. Comm'r, Alabama Dep't of Corr., 682 F. App'x 802, 809 (11th Cir. 2017) (recognizing that the Supreme Court in Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013), "has already determined that there is no clearly established federal law with regard to how a court is to treat a request for counsel made after a valid Faretta waiver").

32

parties were aware, the sole reason for moving to withdraw the demand was because [Petitioner] wanted counsel appointed." Doc. 1-1 at 47. He continued, "The trial court's error in sustaining the State's objection to the withdrawal of the demand for speedy trial and objection to alternative counsel being appointed, required [Petitioner] to proceed to trial denied of his right to counsel." Id. at 48.

In its answer brief, the state first argued that Petitioner "failed to preserve any argument that good cause existed to withdraw his demand for speedy trial." Id. at 84. Second, on the merits, the state argued that Petitioner's "only cause for withdrawing his demand [for speedy trial] was his unpreparedness for trial, and that cannot constitute good cause." Id. at 86. According to the state, Petitioner "used his demand for a speedy trial to manipulate the court's docket without any bona fide desire for a speedy trial, and he cannot complain when such impermissible efforts backfired on him." Id. In support of its position, the state asserted that Petitioner's actions were an attempt to delay his proceedings, "based on his consistent pattern of demanding speedy trial and then withdrawing the demand immediately before trial in his other two pending cases." Id. at 87. Finally, the state contended that Petitioner's

request for counsel was merely a relabeling of "unpreparedness," which cannot constitute good cause to withdraw a speedy trial demand. Id. at 88.

In his counseled reply brief on appeal, Petitioner asserted that his claim was properly preserved, and that the state's argument about Petitioner abusing the judicial process relied on facts from Petitioner's other cases which are not relevant to this case. Id. at 119-20.

The First DCA affirmed Petitioner's convictions without comment. Doc. 9-9 at 2-3. Insofar as Petitioner argues that the trial court erred when it failed to find good cause to withdraw his demand for speedy trial under Florida Rule of Criminal Procedure 3.191(g), that assertion is wholly a matter of state law that is not cognizable on federal habeas review. Indeed, the purpose of a federal habeas proceeding is to review the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722 (1991). Only in cases of federal constitutional error will a federal writ of habeas corpus be available. See, e.g., Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993). Indeed, "it is not the province of [this Court] to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Nevertheless, to the extent he argues that as a result of that denial, he was denied his constitutional right to counsel, this Court concludes that the

state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to federal habeas relief as to Ground Two.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of August, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 7/28
c:
Ricky T. Oliver, #102311
Counsel of Record

---

[8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.